(169 App. Div. 499)

### In re VANDERPOOL.

(Supreme Court, Appellate Division, First Department.　November 5, 1915.)

ATTORNEY AND CLIENT &58;—53—DISBARMENT—GROUNDS.

　　In a proceeding to disbar an attorney, evidence *held* to show that he was guilty of misconduct warranting disbarment, in appropriating money intrusted to him for investment.

　　[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 74, 75; Dec. Dig. &58;—53.]

Application for disbarment of Augustus G. Vanderpool, on report of the official referee, upon charges of professional misconduct. Respondent disbarred.

See, also, 165 App. Div. 983, 150 N. Y. Supp. 1116.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Einar Chrystie, of New York City (John H. Iselin, of New York City, of counsel), for petitioner.

Frederick J. Stone, of New York City, for respondent.

PER CURIAM. The respondent, now over 70 years of age, was admitted to the bar in 1867, and has practiced in the city of New York ever since. In the year 1911 a client, Miss Jennie M. Derick, desired to invest a sum of money on bond and mortgage, and asked respondent, who had transacted other business for her, if he could find her a gilt-edged investment. Respondent took her to view a piece of property on Eighty-Ninth street, near Third avenue, in the borough of Brooklyn. This was satisfactory to Miss Derick, who thereupon gave respondent a check for $2,507.98, which he received and deposited in an account maintained by him in the Empire Trust Company. This

was in the autumn of 1911. In January, 1912, as Miss Derick says, respondent asked her to give him $100, so that the loan could be made for $2,600. This she says she did, although respondent denies it. On September 4, 1912, respondent transmitted a check to Miss Derick for $80.20 in a letter, in which he stated that it was for interest on the mortgage in question. About six months later, in February, 1913, respondent sent her another sum as interest on the mortgage, and in August of the same year he sent her another sum, which he described as the interest for six months.

Up to this time Miss Derick had never seen the alleged bond and mortgage. In October, 1913, she asked respondent for the bond and .mortgage, and he replied, "Up at my house," or "Up at the house." On October 16, 1913, she sent him a letter saying that on October 31st, at a certain hour, she would be at the office of a safe deposit company in Brooklyn, where she had a vault to which both she and respondent had keys and access. He made no reply to this letter, but met his client at the time and place mentioned, and then told her that there was no bond and mortgage; that it had never been made. Miss Derick, by letter dated November 7, 1913, demanded from respondent the return of her money, with interest, and a settlement of her entire account with him, by November 26, 1913. On the evening of the day before that so fixed for a settlement respondent called on Miss Derick and had an interview with her, in the course of which he paid her $165 on account of other matters, and induced her to accept his note for one year for $2,639 in place of the money which he had failed to invest. About two weeks before the due date of this note she wrote, reminding respondent that the note was about to become due, and asking him to remit the amount. Instead of doing this, he commenced action against her for the sum of $4,955.54 for alleged professional services. He has never repaid any part of the sum intrusted to him for investment. So far all of the facts stated are substantially admitted by respondent, except the receipt of the $100 in January, 1912.

The attempted defense by the respondent is pitiable in its evasions and contradictions. He says in the first place that there were certain defects in the title which required to be cured before a valid mortgage could be given. This is undoubtedly true, and so Miss Derick was informed at the outset; but she was also given to understand that these defects could be cured in a short time, and was never informed that they had not been. On the contrary, by the payment of three installments of interest, and the reference by respondent to the bond and mortgage, she was led to believe, and undoubtedly did believe, that the documents had been executed.

To explain his payments of interest the respondent says that it was agreed between himself and the projected mortgagor, one Michael K. Neville, that the interest should be so paid out of the principal until the title had been cleared, when the mortgage was to be executed for the whole amount. This is categorically denied by Mr. Neville, whose evidence the official referee accepts. The improbability of respondent's story appears from the fact that he admittedly drew out and used the money for some purpose.

The account in which he deposited his client's money was in his name "as trustee"; but it was the only bank account he kept, and was manifestly used for general business purposes. After admitting that he had drawn the money out and used it, he was pressed to state what he had done with it. He said at first that he had used it all, "every penny of it," in Miss Derick's business. Being asked in what business, he said it was in the action he had brought against her for legal services. When it was pointed out that that action was not begun until long after the transactions, he corrected himself, in response to a suggestion by his counsel, and said that he had used it in paying the expenses of an action which he had brought for Miss Derick against one Richardson. When it was pointed out that the action against Richardson had been brought and the complaint dismissed long before he had been intrusted with the money in question, he said that he had used it in defraying the expenses of an appeal, and that he did so with Miss Derick's knowledge and consent, although he failed to explain how so large a sum could have been expended upon the appeal. It appeared and was admitted, that respondent had received a retainer of $250 in the Richardson suit, and had agreed in writing to conduct it for a contingent fee. Of course, all these attempted explanations as to how the money had been spent were entirely inconsistent with respondent's act in giving his note for the amount. That was an admission that he then owed the money.

On the whole case, it is impossible to avoid concurring in the opinion expressed by the official referee that respondent received the money of his client to be applied to a specific purpose, and that he did not so apply it, but misappropriated it to his own use, and that this conduct towards his client was deceitful, and constituted gross professional misconduct, which resulted in the loss of his client's money.

Under these circumstances, our duty seems to be clear. It is painful to contemplate the downfall of so old a man, who has pursued a professional career for so long a period. But neither age nor professional experience can excuse such misconduct as the respondent is clearly guilty of. To overlook his offense would be to encourage younger and less experienced men to believe that larceny is not, in the eyes of the court, a serious crime.

The respondent is disbarred.